2-13-1106, people of the state of Illinois, Plainton Atholete v. James Ealy, Defendant of Cullen. Arguing on behalf of Defendant of Cullen, Attorney Mr. Kerry Gatch. Arguing on behalf of Plainton Atholete, Attorney Ms. Victoria E. Joseph. All right, Mr. Gatch, are you ready to proceed? Good morning, Your Honors. Good morning. My name is Kerry Gatch and I represent the appellant, Mr. James Ealy. Mr. Ealy was sentenced to life in prison after being convicted of first-degree murder in relation to the death of Mary Hutchinson. I want to make something clear for the record. I was going to do this first. I am not in any way related. The spellings are different. It's just an unusual roll of the dice that I'm here today. Ms. Hutchinson was killed in her office at the Lyndon Hersberger King in November of 2006. But there was no forensic evidence of identification of the killer found at the scene. This lack of direct evidence is perhaps why the prosecution made some mistakes in this case. As discussed in our first issue, the prosecution introduced evidence that Mr. Ealy had refused a consent search and seizure of his own DNA. And then went on to argue that the presumption of innocence was somehow an unjust reward in this case. If, in fact, there was no forensic evidence tying the defendant to this particular site, why would there be a problem if it was clear that there was no evidence linking him that way? Why would it be a problem that this evidence about his not voluntarily giving his DNA an issue or an error? Well, the reason it's an error is that it's infringing on his right to deny. He had every right not to consent to the seizure of his DNA. If that is used against the defendant, then the right becomes meaningless. If the defendant is not allowed, if it's evidence of his culpability to exercise a constitutional right, then the constitutional right is necessarily degraded. Nobody would exercise the right because they would be viewed as guilty as they did. The state points out a couple areas where this is brought up. There is no objection in the trial court. And then when there is an objection, the objection is basically to prejudicial effect based upon a tactical decision because the defendant is going to argue that the state already had his DNA and that's why he refused because of a prior conviction. It never really got to the constitutional issue or due process issue or anything that you're raising now. Right. The argument in that trial was that he should be allowed to get into, well, that it shouldn't have been admitted because defense counsel was uncomfortable discussing perhaps why they had his DNA on the file. The issue, if not preserved, can be addressed as plain error just in the same way that Egan addressed a similar issue in plain error where the defendant refused to take a drug test. The court there, this court, found that that was plain error because, again, it's infringing on a constitutional right, refused to consent. We're not talking about an issue. There are some cases cited by the state wherein the police have a warrant to seize an item or do a bodily search or there's a court order or some function and the defendant still refuses. This is one where it's an initial investigation. They don't have probable cause. They don't even have a suspect at the time. They're basically bringing in everyone that worked at that Burger King over the past year or two and, you know, doing a preliminary asking for consent to fingerprints and DNA. You know, any one of those people have the right to say no, you know. Whether it makes sense or not under the situation is not really relevant because they still have that right. Otherwise, the Fourth Amendment becomes essentially meaningless. Are you arguing first prong or second prong or both are plain error? Second prong, as it was in Egan, the infringement on this constitutional right, you know, affected his right to a fair trial, especially if you look at it in context of the other two issues that are also. Prosecution argued in closing that the jury should reward the defendant for their lack of evidence, for the lack of DNA or fingerprint forensics or any other evidence actually placing the defendant at the scene. Obviously, the presumption of innocence is not a reward. Getting found not guilty isn't really a thing. That's what the prosecution argues. You shouldn't find him not guilty. Well, he's not guilty until he's found guilty. So there might be another problem with the phrasing the state uses. And again, it's not a reward. You can't shift the burden to the defendant to say, well, just because we don't have certain evidence, he's going to be rewarded for that. That's totally improper. Is it shifting the burden or diminishing the burden? Well, I clarify it and say it's shirking their burden. It's saying we don't really have to show this stuff, which they don't. And they're free to explain why this evidence might not be there. But to say that it's somehow a reward to the defendant for their lack of evidence is totally improper. Well, what about the painting of him as a smart criminal? Is that problematic? Well, yeah. It all ties in. I think the phrase that they use is we don't reward criminals for doing their jobs too well. Well, no, of course not. We don't reward criminals in any way. Trial is not a reward. Trial is a right. The right to a jury trial. The right to have the jury decide whether that evidence is sufficient. Obviously, we're all prone to rhetorical excesses. And the state was trying to get across the point, well, just because the DNA and the fingerprints aren't there doesn't mean he's not guilty. But there's ways of saying that without going into this whole tricking of their burden and the reward type theme. And just because somebody's too good of a criminal, don't let them off the hook. None of that is relevant to whether the evidence shows guilt or not. With respect to, if we go back to the issue of the DNA and his refusal to give the DNA, we don't, we have to look at not only the prejudicial effect, but really whether there was any probative value to this and wasn't there to show consciousness of guilt. I totally agree. And that is another thing that was discussed at Egan. They wanted to take a drug test at Egan, even though whether he had consumed cocaine or not was irrelevant. And it's the same thing here. A, they already had his DNA on file. B, they got the DNA two days later with a search warrant. So they were never denied meaningful access to this DNA. C, there was no DNA evidence found at the scene. So DNA wasn't really even relevant. So basically it boils down to he didn't want to do what we wanted him to do. So that makes him look suspicious. And that's not grounds for convicting someone of first degree murder, just because you think he looks suspicious. So you're saying it probably in the end wasn't even probative. Correct. Under those, because of what you've just explained. Right. The state took something that really had zero probative value and made it into something like, look at that guy. He was the only one. It must have been him. Which, again, was totally improper. I'd like to move on to the second issue that I addressed in the brief. Which could have been avoided had the prosecution not issued separate verdicts for knowing an intentional murder. What happened in this case is the jury found Mr. Edith guilty of intentional murder, but not guilty of knowing murder. And as we all know, knowing murder is a lower level of culpability than intentional murder. And the law provides that to act intentionally necessarily means that you've acted knowingly. There are two ways to charge murder. I mean, even though there's one offense, this was charged two different ways. One was knowing and one was intentional. So it really isn't like Jones in this regard. Correct. Jones, the main distinction is that in Jones there are two actual crimes. Whether the mental state is different in those crimes, Jones is saying, well, we don't need to be concerned about that. But here we have a single crime of murder that is committed, that can be committed in different ways. So you're saying you don't think it's two different offenses? I don't. I mean, the law says it's not. Murder is murder. First degree murder is first degree murder. Whether it's felony murder, knowing murder, or intentional murder. And the law says it doesn't matter what the jury thinks. The jury is supposed to get a single form verdict form. And when felony murder is also an issue, then the defense can request separate verdicts on felony murder for reasons that don't matter in this case. But murder is murder under the law. And whether half of the jury thinks maybe it was knowing murder, half thinks it's intentional murder. Only one verdict. They can still sign the guilty verdict. So it's not separate crimes. Murder is murder. Jones doesn't use the word crimes. He uses the word offenses. Correct. So you can charge things in different. You're saying that charging in the alternative is not charging different offenses. Right. Why does the rationale behind Jones and Powell not apply in this situation? I mean, the rationale is jury lenity, and we don't really know what the jury is doing, but we're going to give them the benefit of the doubt. Why does that still not apply when you're talking about alternatively charged counts of murder? Well, the rationale is. The rationale of lenity doesn't apply because they're convicting and acquitting at the same time. He's not getting any lenity in this situation because they're also convicting him. So the idea that the lenity rationale in Jones is that we don't want to question the jury if they have this separate acquittal on another charge. Again, that makes sense if they're separate charges, but here it's a single crime. You can't. It's as if the jury had signed, they've gotten only two verdict forms, guilty and not guilty, and they signed both of them. That's not lenity. That's just wrong. Right. It's inconsistent. But Jones cites the Powell, and Powell talks about, you know, refusing to allow defendants to challenge convictions on the basis of inconsistency for the three reasons listed. And the three reasons are that no one knows who benefits. You know, fashioning a rule that would only allow a defendant to challenge this is inconsistent with justice. And the defendant is still protected from jury rationality because the defendant can always challenge their conviction on sufficiency of evidence grounds. So, I mean, when you're looking at the basis underlying Jones, which is Powell, it still applies whether it's inconsistent on the same charge or inconsistent on different charges. Well, if you look at Porter, Porter is almost identical in that a mitigating factor is found to drop the charge to second degree murder. We can all agree second degree murder is lesser than first degree murder. They couldn't retry if they knew what the conviction should be. They couldn't retry him on first degree murder if they sent it back. But they're saying we don't know what happened to you because you can't have first degree and second degree at the same time, just as you can't have intentional and knowing at the same time. And I think that's why Porter is a better comparison. You know, the fact that it's a not guilty here isn't really the deciding factor because murder is murder again. And so the comparison between first and second degree murder finding in Porter is much more apt than in Jones where it's mob action and aggravated battery. Well, we don't know what the jury meant to do. They didn't know necessarily that, you know, the mental states would be inconsistent or that in finding him not guilty of aggravated battery, that means they can't find him guilty of mob action. But here, and again, if we follow the IPI, you get a single verdict form for knowing intentional murder. I'm not exactly sure why the prosecution broke them out in this case. It's highly unusual and I doubt it will happen. Well, isn't it a theory that the reason they did it is because they also submitted the brutal and heinous form and they came back with brutal and heinous, which would be more consistent, if we're going to use these terms, with intentional and the type of injury that was observed? That's possible, but again, there's no reason to submit the two verdict forms in that situation. The state, the prosecution, set this up in a weird way. They allowed the jury to find these inconsistent results. And I mean, it's highly problematic when the jury both acquits and convicts of a single crime of murder. If you don't have any other questions, then I think my time is- You'll have an opportunity for response if you choose. Thank you. Thank you. Ms. Joseph? Good morning, Your Honor. It's Victoria Joseph for the people of the state of Illinois. May it please the court? Counsel? We will begin where the defendant began, looking at the lack of forensic evidence in this case and how it's tied into several of the arguments and his sub-arguments within his first argument. The fact that the defense began saying that there is no forensic evidence and this lack of direct evidence led to the people's errors is part of the reason why the DNA evidence is relevant and probative as a whole. We have to remember that relevant evidence is that which has the tendency to make something more or less likely. And here, it benefited the defendant on the fact that his lack of DNA made it less likely. He was the perpetrator, if you're looking specifically at the direct evidence. What we're talking about is refusal, not the lack of evidence here. I take it you would agree that we all have a right, absent a warrant or a court order, to refuse to have someone violate our bodies to obtain DNA evidence. You would agree with that? I would agree with that, Your Honor. So he has the right to say no to the police? He does have a right to say no to the police. So if you have the right to say no to the police, how can that then be admitted as evidence of consciousness of guilt against you at your trial? In looking at the court's reasoning in Egghead, it specifically found that neither the Fourth Amendment or Fifth Amendment rights prevented the admissibility of the refusal. It then went on to what seemed to be the weighing test of does the prejudicial effect outweigh the probative value. Maybe you can correct me if I'm wrong, but that seemed to be where it went from there. Ultimately, it found very low probative value of refusing a task to determine consumption as related to a charge for possession. Here, you have a refusal to submit to DNA evidence where there is DNA found at the scene of the crime. At that time, they don't know whose it is. That's very true. At that time, they did not know. So they're looking for everybody. But the point is, by the time that case went to trial, they clearly knew that there was nothing of a DNA fact or factor that would put him at that crime scene. So why would they jeopardize their case by putting it in? They can ask him for it, and he can say no. And they got their warrant, and they could have gone into the records if they wanted to get it from his previous incarcerations. But now we're several months, maybe a year beyond that. Why would they jeopardize their case by putting it in? What does it add other than he didn't do it, and therefore he must be afraid he's going to be found guilty in this case? As that argument was not addressed below, I can't speak to what was going on in the mind of the prosecutors directly. But that seems to be based on how they went forward, what they were using the evidence for. But by the same token, they wouldn't let him introduce evidence that other people paid rent the same way he did over a period of time. I realize it's the state's case, and it's the state's burden. But what was that about? The financial motive evidence, the pattern of rent payments for the entire apartment complex is basically doing precisely what such evidence is not supposed to be admissible for. It's showing the poverty of an entire building. How the rent payments were used in this case, it was in culmination with the fact that he had recently asked for a loan. He recently had additional expenses, and all of a sudden he had an unexplained amount of cash that he would not normally, would otherwise have had, as he was directly using his pay stubs to go to his rent. So the fact that the rest of the apartment complex may have also been impoverished was not going to make it more or less likely when you had additional circumstances that were being considered within this defendant. So letting evidence in of what other people were doing is irrelevant. Is irrelevant. Now then tell me, why is it relevant as to what other people were consenting to DNA? I mean, letting in evidence of what other people are doing, if it's irrelevant for the defendant, it's certainly irrelevant for the state. How is that relevant? Everyone else consented to DNA, but your guy didn't, and you're going to put that in before the jury. How's that relevant? I honestly don't know, Your Honor. I mean, it kind of compounds the issue. The cases that Egan cites, and Egan kind of goes all over the board, but the cases that Egan cites are some federal cases, Moreno being one of them from the Seventh Circuit. And Moreno cites to Runyon, which is a case that talks about every federal circuit that's looked at this issue of whether or not it's admissible to put in a refusal to consent to a search without a warrant, has found that that's error. Every federal circuit that's addressed that, except to Runyon, has found that to be error. Many of them finding it to be a violation of due process, because if you have a right to refuse, then it's just fundamentally unfair to comment upon that right at trial. I mean, what do you say to those federal circuits that say that balancing test or not, it's inadmissible? And we agree that the Fourth and Fifth Amendment aren't at issue here. It's due process. Well, as this court has relied on them, it is now binding within this court. So they have considered this as persuasive authority, and the people understand that. And all we can do is go on to look at the fact that we had distinctions from the other cases of Kennedy and Warner factual. And that's all we can really find. As cited in Egan. As is cited in Egan. Did any balancing take place here on the record? As far as this- Admission or- The only balance that was addressed was its relation to the defendant, why the defendant wanted to present additional evidence. Because of how the objection was worded, if this comes in, I would then have my prior convictions come in to explain the context of it. So because it wasn't specifically addressed within the relevance and prejudicial effect of the refusal, we don't have that balancing test on the record that took place here. With respect to the issue of inconsistent verdicts, do you agree with opposing counsel that murder is one offense, and so that it's irrelevant that it was charged in two different ways? And does Jones apply or not? With murder, the plain language of the statute sets forth alternatives by which to charge an offense. And those alternatives are not synonymous with one another. But they're related to- They're related to- Yes. So you agree with defense counsel? To the extent that you are still looking at the holdings of the Supreme Court in addressing inconsistent verdicts, they're looking at inconsistent guilty verdicts. So the concern of Jones and Powell in that you're having a jury reconsider an acquittal, I believe would still raise some of those due process concerns, even on a single offense. Because of the alternatives by which you can argue they are different theories of the offense. And so do we have a guilty verdict and an acquittal on the same charge here? We have a guilty verdict on a charge under A1 for intentional. And we have a guilty verdict under A2, I believe. So two different charges but the same offense? Two different charges but the same offense. Because you only have one person who was- Obviously you only have one victim in the case. So you only kill a person once, I believe. We have the same result, murder. Yes. But we have different ways to do that according to the statute. Yes. But one of the issues is, in citing different ways, intentional says that the act will knowingly cause, is likely to cause bodily harm or serious injury, which is the same as knowing. So why are they different offenses? If they contain the same general language, I guess, is the issue. Yeah. I mean, they are intentional. A1 defines the two most culpable states as intentional and knowing. Now, unlike reckless acknowledge, which has been found as mutually inconsistent, I have found no case that says that intent and knowing are mutually inconsistent. In fact, as we know, knowledge is subsumed with an intent. Why a jury would separate those two is absolute speculation as to why you would- Well, the reason they might is because they were given these two options. They were given the options and thought they had to choose one over the other. The real question is, why did the state offer both? And, again, I know you weren't there, and you probably didn't ask that question, but doesn't it seem more likely than not that presenting these two options to a jury of civilians who are given certain instructions, but sometimes not about this issue, aren't going to be confused? Just theoretically, why would that happen? And the answer really can't be because the state can. It should have some meaning. Because intent is a more serious offense. And if you don't charge in every way, you run the risk of, if you're acquitted, you can't retry on another offense. So probably to cover all of the bases, if they could not show full-out intent, they were going to also show that you had knowledge that your actions were going to cause a strong probability of death or bodily harm. Because they wanted the heinous and brutal application, or at least the state apparently did since that was submitted as one of the options, is that more likely to, if we look at it this way, fit with the intentional or fit with the knowing? Well, it was attached to all of them. So it's hard to say, picking out among what the focus, intended focus was. But the exceptionally brutal or heinous was, if you look at the counts four through six, they all have that attached to it. My personal thoughts would be that when you're acting brutally or heinous toward a person, it's more in line with intent. But that would be my own view and not necessarily the view of others. Thank you very much. Mr. Getsch. The one issue I wanted to touch on was the state's contention that the rent payment practices of the other people weren't relevant. You cite Rule 406, Illinois Rules of Evidence, that say it is relevant. So I don't think the state's contention that what other people, the pattern and practice of that apartment complex was relevant. If the state was going to try and use this as some sort of culpable evidence, this guy paid his rent in a wacky way, well, if everybody paid their rent that way, so what? That becomes meaningless. That's what the defense wanted to get at. Is it the pattern or practice of a particular individual or everybody else? I mean, doesn't the rule really go to the habit or pattern or practice of this particular individual we're talking about? Correct. It was James McDonald, the person that was in charge of the apartment complex. His pattern and practice was to allow the people that lived there to pay rent in multiple installments. So we're looking at his as opposed to what the defendant's pattern and practice was. Correct. Because if it's the guy in charge's pattern and practice, then people are going to follow that pattern and practice. So the idea that Mr. Ely followed Mr. McDonald's pattern and practice, and other people did as well, basically means that Mr. Ely was doing the same as others. So it really sort of negates the relevancy of – and, I mean, the State used this in an argument in closing saying, you know, we knew he couldn't pay his rent on time. Well, isn't it a reasonable inference that he couldn't pay his rent on time? I mean, are you saying that because other people couldn't pay their rent on time that that means that he was flush but he just chose to do it this way? Well, allowing an evidence of what other people do in a particular situation always is fraught with problems. I mean, the relevance is tenuous. So how is that an abuse of discretion to not let in what other people are doing in a given situation? Well, it's not even necessarily – it's whether Mr. McDonald allows this practice of other people as well. You know, the State – the theme throughout this trial was the State was trying to make Mr. Ely look unique. He wasn't unique in Mr. McDonald's eyes for paying his rent this way. The State said he was, but he wasn't. There was other people doing it because McDonald allowed for that. I mean, my mortgage company allows us to pay the mortgage up to the 15th. It's due on the 1st. But the fact that I paid on the 5th, that doesn't mean I'm, you know, destitute. It's because it's the pattern and practice of my mortgage company, and I'm sure a lot of other people do that. So the idea that Mr. Ely was the only one doing that, that's what makes this problematic, and that's what the defense wanted to get into. It wasn't that this evidence wasn't admissible. It's just that there was an explanation for it, a lot like with the DNA. But was there any other evidence that we're aware of that any of these other tenants had asked somebody for a loan for a period of time, a period of time before, and that this pattern of paying rent had gone on for at least six months that we know of? Well, we don't know because the defense wasn't allowed to – I mean – Well, so what you're saying, it would have also been appropriate for – I mean, how does Mr. McDonald know that? He's got a ledger. Well, he knows the payments, but how does he know that he asked for a loan from somebody else in this period of time? Well, that came in during the witness, but – Okay. So, you know, we've got two things here, the fact that he asked for a loan and that he paid his rent differently. Would you – would the defense have gotten everybody on the stand to see if they had asked anybody else for a loan in the past six months? No. Okay. So we have this bit of information in their theory that this was for financial purposes. Okay. Would this have been a problem if there hadn't been the DNA, everybody else did it, but he didn't? Would it have been a problem standing alone, or is it a problem because of the DNA issue as well? Well, there's a cumulative effect of all these areas, I think, but also the reward time argument. It's analogous to – you're ordering the Denver omelet and they mess up the ham, the peppers, and the onions. You're just left with scrambled eggs. So you've got a trial where three errors occurred. A cumulative error there is why all three of these are. Yes. Justice Brooks? Yes, Justice Brooks. All right. Thank you very much. All right. Thank you, counsel, for your arguments. We will take the matter under advisement, issue a decision in due course. We will take a brief recess.